UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
08-CV-2449(JMR/RLE)

| | | |
|---|---|---|
| United Steel, Paper, and | ) | |
| Forestry, Rubber, | ) | |
| Manufacturing, Energy, | ) | |
| Allied Industrial and | ) | |
| Service Workers | ) | |
| International Union, | ) | ORDER |
| AFL-CIO-CLC et al. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Pension Benefit Guaranty | ) | |
| Corporation | ) | |

Plaintiff, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC ("USW"), once represented union workers at Thunderbird Mining Company ("Thunderbird") in Eveleth, Minnesota. In 2003, Thunderbird went broke. Upon Thunderbird's bankruptcy, defendant, Pension Benefit Guaranty Corporation ("PBGC"), assumed administration of its pension plan. The USW is presently before the Court challenging certain benefit determinations by the PBGC.

The Court has not reached the underlying dispute. Defendant moves to dismiss this suit, or, alternatively, transfer venue pursuant to statute. Plaintiff objects. The Court finds the venue statute's plain language clear. Accordingly, the Court grants defendant's motion, in part. This matter is hereby transferred to the United States District Court for the District of Columbia.

I.  <u>Background</u>

There are no facts in dispute.  The single question is the interpretation of ERISA's venue provisions.

Congress created the Pension Benefit Guaranty Corporation under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA").  29 U.S.C. §§ 1301-1461.  The PBGC guarantees pension benefits to participants when pension plans terminate.  The PBGC is based in Washington, D.C., and issues its benefit determinations and administrative appeals decisions therefrom.

In 1999, Thunderbird negotiated its pension agreement with the USW.  Under its terms, Thunderbird sponsored an employee pension plan covered by Title IV of ERISA.  After Thunderbird's 2003 bankruptcy, the PBGC moved to assume trusteeship of the pension plan pursuant to 29 U.S.C. § 1342.  On August 19, 2004, the Honorable Michael J. Davis (USDC, D. Minn.) granted PBGC's motion, declaring it the plan's statutory trustee, and setting July 24, 2003, as the plan's termination date.

Subsequent to the plan's termination, between December 21, 2006, and May 15, 2007, PBGC's administrative determinations governed participant benefits.  The USW claims the PBGC wrongly denied plan participants their guaranteed "shutdown benefits."[1]  On May 31, 2007, the USW administratively appealed these

---

[1] "Shutdown benefits" are early retirement pension benefits which vest upon a plant's permanent shutdown. (Def.'s Mem. Supp. Def.'s Mot. 3. n. 4.)

determinations.  On November 30, 2008, the PBGC appeals board found the plan participants were not entitled to shutdown benefits.

On June 17, 2008, USW filed suit on behalf of 253 former Thunderbird employees in the U.S. District Court for the District of Minnesota.  On November 4, 2008, USW filed an amended complaint adding eleven individually named plaintiffs.[2]  USW seeks a declaratory judgment that plan participants are entitled to the denied benefits; enforcement of employees' rights; and damages.  (Am. compl. ¶¶ 21-25.)  On September 18, 2008, defendants moved, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, for dismissal or transfer of venue to the U.S. District Court for the District of Columbia under ERISA's venue provision.  Plaintiff suggests the provision should be broadly interpreted, and asks that the case remain in Minnesota.

II.  Discussion

    A.  Venue Statute

The USW is authorized to bring this action on behalf of plan participants pursuant to ERISA § 4003(f)(1).  ERISA contains its own venue provision which places ERISA actions "in the appropriate court."  29 U.S.C. § 1303(f)(2).  The "appropriate court" is defined as:

    (A) the United States district court before which proceedings under section 4041 or 4042 [29 U.S.C. §

---

[2] These persons "reside primarily in Minnesota."  (Pl.'s Mem. Opp. Def.'s Mot. 1.)

>     1341 or 1342] are being conducted,
> (B) if no such proceedings are being conducted, the United States district court for the judicial district in which the plan has its principal office, or
> (C) the United States District Court for the District of Columbia.

Defendants argue, and the Court agrees, that where there are no current proceedings under §§ 1341 or 1342, and the plan's principal office has closed, the statute compels venue in the District of Columbia. Plaintiff, however, claims the statute permits venue in Minnesota because termination proceedings occurred in this state, and the plan's principal office was based in Minnesota. (Pl.'s Mem. Opp. Def.'s Mot. 5.) In other words, plaintiff argues 29 U.S.C. § 1303(f)(2)(A) and (B) include events which occurred in the past, as well as at present. Plaintiff's theory is flawed, because the statute is plain on its face.

The Court declines to torture the statute's clear language explicitly referring to the "court before which proceedings . . . are being conducted," and to declare - by judicial fiat - the statute really means the "court before which proceedings once were conducted, but are now long-concluded."

"It is well established that we commence any statutory interpretation with the statute's plain language," and "[w]here the language is plain, we need inquire no further." United States v. Cacioppo, 460 F.3d 1012, 1016 (8th Cir. 2006). Title 29 U.S.C. § 1303(f)(2)(A) and (B) uses the present tense three times in

defining "appropriate court." Both parties agree Minnesota's pension plan termination proceedings concluded more than four years ago. And both parties concede the plain language would place this matter in the District of Columbia.

Plaintiff argues, however, the statute permits filing a suit where past proceedings occurred, or where a former principal office was located. Plaintiff supports this argument by reference to two district court decisions which accepted a "past tense" interpretation of ERISA's venue statute. See, e.g., Adey v. Pension Benefit Guaranty Corp., No. 2:06-cv-1421, 2007 U.S. Dist. LEXIS 7705, at *3 (W.D. Pa. Feb. 2, 2007); Garland v. U.S. Airways, No. 05-140, 2006 U.S. Dist. LEXIS 92803, at *18 (W.D. Pa. Dec. 21, 2006).

Plaintiff focuses on the Garland court's venue analysis which asked whether termination proceedings "took place" or were "taking place" in the Western Pennsylvania judicial district. Garland, 2006 U.S. Dist. LEXIS 92803, at *18 (dismissing plaintiff's ERISA claim where plaintiff did not bring suit in an "appropriate court"). Next, plaintiff cites the Adey decision, where a Western District of Pennsylvania court transferred an ERISA suit to the Northern District of West Virginia, because the plan had been terminated in that district. Adey, 2007 U.S. Dist. LEXIS 7705, at *4. The Adey court decided that "interests of justice" favored venue in West Virginia, as many plaintiffs lived in West Virginia,

5

and venue in Washington, D.C., would impose travel costs on them.

Plaintiff argues that, like the <u>Adey</u> plaintiffs, former Thunderbird employees have an "interest in the prosecution and outcome of this proceeding." (Pl.'s Mem. Opp. Def.'s Mot. 17.) Indeed, plaintiff notes it recently added eleven individual plaintiffs to highlight this proceeding's local nature. Plaintiff concludes requiring travel to Washington, D.C., would "constitute an untenable burden on their right to observe, monitor, and participate in this proceeding." (<u>Id.</u>)

Defendants reply, and proffer case law interpreting the ERISA venue provision literally to cases in the present tense. <u>See, e.g.</u>, <u>Stephens v. U.S. Airways Group, Inc.</u>, No. 4:00-cv-144 (N.D. Ohio June 28, 2007) (transferring an action to the District of Columbia under 29 U.S.C. § 1303(f)(2) because the plan terminated four years previously, and the principal office no longer existed). Neither party offers, nor has this Court found, any Eighth Circuit law on point.

The Court finds arguments based on the individuals' location entitled to little weight. This dispute is, ultimately, a contractual interpretation matter, addressing whether the PBGC's determinations were arbitrary and capricious under the Administrative Procedure Act. At oral argument, plaintiff's counsel could not deny its resolution will not require witness testimony, as this is a legal dispute. As such, notwithstanding

6

the possibility that plaintiff-members might like to see the proceedings, counsel points to no need to do so, nor indicates difficulties which might arise from their absence.

Even if plaintiff-witnesses were to become necessary - a highly unlikely prospect - travel costs are a diminished factor. Plaintiffs can proffer video testimony, lawyers can meet via teleconferencing, and parties can rely on email and fax machines to send documents, regardless whether parties are two blocks, or two thousand miles, apart. These are certainly not jury proceedings which might argue for the immediacy of a person's presence.

Plaintiff goes beyond its District Court cases and notes the PBGC argued for a contrary interpretation of this venue statute in the past. It cites PBGC's Adey memorandum, noting the PBGC argued venue was possible where "the plan had its principal office," even though the plan at issue had been terminated, and the PBGC assumed plan administration. Defendant counters by arguing its waiver or partial waiver of a discretionary venue objection in another case has no bearing on the case at bar. The Court agrees; PBGC's past actions do not create precedent for this Court.

Finally, plaintiff complains that a literal reading of ERISA's venue statute leads to an absurd and unjust result. See Public Citizen v. U.S. Dep't Of Justice, 491 U.S. 440, 453-55 (1989) (noting that where a statute's literal reading "compel[s] an odd result," the court must search for other evidence of

7

congressional intent). According to plaintiff, under ERISA § 4003(f), 29 U.S.C. § 1303(f), employers and plan administrators may sue for termination before PBGC assumes a plan's trusteeship. Accordingly, the statute allows employers to file suit wherever the plan's principal office is located. Plaintiff notes, however, that individual plan participants may only file suit after termination proceedings have concluded and the principal office has closed. Thus, while employers may sue in the principal office's district, individual participants must sue in the District of Columbia.

Despite plaintiff's protests, the Court does not find this discrepancy an "absurd result." Congress created ERISA; it did not exist at Common Law. Congress defined the rights it created, including prescribing that venue may be placed where a principal office exists or termination proceedings are ongoing. Simultaneously, it decided that where the PBGC has assumed trusteeship, and a plan's principal office has closed, suits must be located in the District of Columbia. This distinction is not an absurd result. And Congress certainly knew when it created ERISA that this is a nation with a vast geographic spread. As such, Congress understood that terminated, case-concluded ERISA plans would have their issued aired in the District of Columbia, whether the plan had been based in Alaska, Hawaii, Texas, or Minnesota.[3]

---

[3] Finally, the Court notes the ultimate absurdity would be for it to accept plaintiff's argument, and eviscerate the statute's entire venue-establishing scheme.

8

Plaintiff asks the Court to bend the rules of grammar, statutory interpretation, and logic to find the present tense includes the past.  The Court well-respects the wisdom of its colleagues sitting in other District Courts, but also recognizes that as they are not bound by his decisions, he is not bound by theirs.  This Court must follow the Eighth Circuit's instructions – "[w]here the language is plain, we need inquire no further." United States v. Cacioppo, 460 F.3d 1012, 1016 (8th Cir. 2006). These pension plan termination proceedings have concluded.  The plan's principal office has closed.  These are not recent events – the PBGC has governed the plan from Washington, D.C., for more than four years.  Accordingly, the statute commands venue in the U.S. District Court for the District of Columbia.

    B.   Cure or Waiver of Defects

Having found a defect in venue, the Court is again instructed by statute.  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Here, the District Court for the District of Columbia is clearly a venue "in which it could have been brought." Accordingly, the Court finds it in the interest of justice to transfer the case to that District, pursuant to 28 U.S.C. § 1406(a).

III.  Conclusion

    IT IS ORDERED that:

    1.  Defendant's motion to dismiss is denied.

    2.  Defendant's motion to transfer venue to the U.S. District Court for the District of Columbia is granted.

    3.  The Clerk of Court is hereby directed to transfer venue of this matter to the U.S. District Court for the District of Columbia.

Dated:  March 11, 2009

                                          S/JAMES M. ROSENBAUM
                                          JAMES M. ROSENBAUM
                                          United States District Judge